**Susan Martin (AZ #014226)**
**Jennifer Kroll (AZ #019859)**
**Martin & Bonnett, P.L.L.C.**
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone:    (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Dale Wallace; Dean Bertrand, | Case No.: |
| Plaintiffs, on behalf of themselves and all others similarly situated | **CLASS ACTION COMPLAINT** |
| v. | |
| Desert States Employers & UFCW Unions Pension Plan; Board of Trustees of the Desert States Employers & UFCW Unions Pension Plan, Plan Administrator of the Desert States Employers & UFCW Unions Pension Plan, | |
| Defendants. | |

Plaintiffs George Dale Wallace and Dean Bertrand, by and through undersigned counsel, hereby bring this action under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* for benefits and to declare their rights under the terms of a pension plan, to enforce rights and remedy violations of the terms of Desert States Employers & UFCW Unions Pension Plan and ERISA.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to § 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

2.      Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2),

and 28 U.S.C. § 1391 because the claims arose, the breach took place and the pension plan is administered in the District of Arizona, and Defendants do business and may be found in this District.

## PARTIES

3.     Plaintiff George Dale Wallace ("Mr. Wallace") was employed by various employers under collective bargaining agreements between those employers and Local 99 of the Desert States Employers & UFCW pursuant to which employers contributed to the Desert States Employers & UFCW Unions Pension Plan and predecessor plans ("Plan").

4.     Mr. Wallace is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. 1002(7).

5.     Plaintiff Dean Bertrand ("Mr. Bertrand") was employed by various employers under collective bargaining agreements between those employers and Local 99 of the Desert States Employers & UFCW pursuant to which employers contributed to the Plan.

6.     Mr. Bertrand is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. 1002(7).

7.     Defendant Plan is a defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiffs.

8.     Defendant Board of Trustees of the Desert States Employers & UFCW Pension Plan is the Administrator of the Plan and a fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

## GENERAL ALLEGATIONS

### A. The Plan

9.     In or around January 1995, the Plan was established as a spin-off of a portion of the predecessor plan, the Rocky Mountain UFCW Unions & Employers Pension Plan (the "Rocky Mountain Plan") pursuant to a Transfer Agreement setting forth the terms and

conditions governing the transfer of assets and liabilities from the Rocky Mountain Plan to the Plan.

10.    From on and after January 1, 1995, the Plan assumed responsibility for paying the vested accrued benefits owed to participants under the Rocky Mountain Plan for the liabilities and assets that were transferred to the Plan.

11.    Effective on or about July 1, 2005, the Plan accepted a transfer of certain assets and liabilities from the Intermountain Retail Food Industry Trust Fund Pension Plan ("Intermountain Plan") to the Plan (hereinafter the Intermountain Plan and Rocky Mountain Plan are collectively referred to as "predecessor plans").

12.    Effective on or about July 1, 2005, the Plan assumed responsibility for paying the vested accrued benefits owed to participants under the Intermountain Plan for the liabilities and assets that were transferred to the Plan.

13.    The Plan and the predecessor plans had suspension of benefit provisions providing for the suspension of pension benefits for participants who retired and returned to certain employment following commencement of employment.

14.    Prior to December 31, 1997, the Rocky Mountain Plan and the Plan's suspension of benefits provisions only permitted the suspension of benefits for retired participants during periods prior to age 62 if they were working in employment covered by a collective bargaining agreement under which the employer was required to contribute to the Plan.

15.    Prior to December 31, 1997, the Rocky Mountain Plan and the Plan's suspension of benefits provisions only permitted the suspension of benefits for retired participants during periods beginning at age 62 or older if they were working in employment in which the participant received 40 or more hours of service under the Plan.

16.    Upon information and belief, prior to May 2, 1991, the Intermountain Plan's suspension of benefits provisions only permitted the suspension of benefits for retired participants if they returned to work in employment covered by a collective bargaining agreement under which the employer was required to contribute to the Intermountain Plan.

17.     Upon information and belief, by amendment effective May 2, 1991 ("1991 Intermountain Plan amendment"), the Intermountain Plan was amended to expand the suspension of benefits provisions by providing that on and after May 2, 1991, benefits were suspended if a retired participant had more than 40 hours of service per month of employment in the same industry, same trade or craft and same geographic area as the participant's work under the Intermountain Plan.

18.     By amendment effective January 1, 1998 ("1998 Plan amendment"), the Plan was amended to expand the suspension of benefits provisions by providing that for all retired participants during periods prior to age 62, benefits were suspended for "any employment or self-employment in the retail food industry within the States of Arizona and New Mexico."

19.     The 1998 Plan amendment also expanded the suspension of benefits provisions by providing that for all retired participants during periods on and after age 62, benefits were suspended if the participant worked 40 hours or 8 days or more in a month in employment or self-employment in the same industry and the same trade or craft and in any state in which employment was performed as a covered employee under the Plan.

20.     The 1991 Intermountain Plan amendment purporting to expand the Plan's suspension of benefit rules reduced benefits that were already accrued in violation of ERISA 204(g), 29 U.S.C. § 1054(g).

21.     The 1998 Plan amendment purporting to expand the Plan's suspension of benefit rules reduced benefits that were already accrued in violation of ERISA § 204(g), 29 U.S.C. § 1054(g).

22.     No notice in advance of the 1991 Intermountain Plan amendment was given to participants informing them that their future benefit accruals would be reduced by the 1991 Intermountain Plan amendment.

23.      No notice in advance of the 1998 Plan amendment was given to participants informing them that their future benefit accruals would be reduced by the 1998 Plan amendment.

24.     In 2004, the Supreme Court rendered an opinion in *Central Laborers Pension Fund v. Heinz*, 541 U.S. 739 (2004), which held that plan amendments expanding the scope of suspension of benefits provisions (such as the 1991 Intermountain Plan amendment and the 1998 Plan amendment) violated ERISA § 204(g), 29 U.S.C. § 1054(g).

25.     Following the Supreme Court decision in *Heinz,* the Internal Revenue Service issued a revenue procedure, Rev. Proc. 2005-23, as amended, which was designed, *inter alia*, to afford plans and contributing employers protection from having the employer contributions and the plan disqualified under the Internal Revenue Code only if amendments were adopted prior to January 1, 2007.

26.     The IRS through Rev. Proc. 2005-32 explicitly stated that the revenue procedure "has no effect on the rights of any party under section 204(g) of the Employee Retirement Income Security Act of 1974 (ERISA) or any other law."

27.     By amendment purporting to be effective as of June 7, 2004, the Plan purported to adopt an amendment retroactively re-adopting the unlawful May 1991 Intermountain Plan amendment by imposing a new suspension of benefits provision that provided that benefits accrued prior to May 2, 1991 could be suspended if the participant returned in employment covered by a collective bargaining agreement under which the employer was required to contribute to the  Plan and that benefits accrued on and after May 2, 1991 could be suspended if the participant returned to work and worked 40 hours or more in employment or self-employment in the same industry and the same trade or craft and geographic area in which employment was performed as a covered employee under the Plan.

28.     By separate amendment, also purporting to be effective as of June 7, 2004, the Plan purported to adopt an amendment retroactively readopting the 1998 unlawful Plan amendment by imposing a new suspension of benefits provision that provided that benefits accrued after December 31, 1997 could be suspended during periods prior to age 62 if the retired participant worked in any employment in the retail food industry within the States of Arizona or New Mexico and that during periods on or after age 62, pension benefits

accrued after December 31, 1997 could be suspended if the retired participant worked 40 hours or more or 7 days or more in employment or self-employment in the same industry and the same trade or craft and in any state in which employment was performed as a covered employee under the Plan.

29.    Although the two Plan amendments purporting to change the suspension of benefits rules effective as of June 7, 2004 (together referred to herein as the "2004 Plan amendments") contain printed dates of December 22, 2006, upon information and belief the amendments were not adopted until sometime after January 1, 2007.

**B. Mr. Wallace's and Mr. Bertrand's Employment and Retirement**

30.    From in or around April 1975 through in or around  June 30, 2005, during his employment under the Plan and prior to his retirement, Mr. Wallace worked for grocery store employers who had contracts with United Food and Commercial Workers Local 99 and that had signed pension agreements requiring the employer to make contributions to the Intermountain Plan and the Plan.

31.    From in or around October 1978 until his retirement in or around July 2012, during his employment under the Plan and prior to his retirement, Mr. Bertrand worked for grocery store employers in Tucson, Arizona who had contracts with the Desert States United Food and Commercial Workers Local 99 requiring the employer to make contributions to the Rocky Mountain Plan and/or the Plan.

32.    As a result of their employment, Mr. Wallace and Mr. Bertrand became vested and earned nonforfeitable rights to their accrued benefits under the Plan.

33.    During his employment prior to his retirement, Mr. Wallace worked as a deli manager for grocery stores in the retail food industry.

34.    During his employment prior to his retirement, Mr. Bertrand worked as a dairy manager for grocery stores in the retail food industry.

35.    Mr. Wallace retired effective November 1, 2010.

36.    Mr. Bertrand retired effective July 1, 2012.

37.     Following Mr. Bertrand's and Mr. Wallace's retirement, they each began working in different positions in a different industry for different employers who had no contracts with the UFCW, who were not in the retail food industry and whose employees were not covered by the Plan.

38.     Beginning in 2012, Mr. Bertrand began working for Premier Concepts, a marketing company, as a representative.

39.     Premier Concepts is a marketing company that assists its customers with product placement to promote certain products.

40.     On a yearly basis, beginning in or around January 2013 and continuing through 2017, Mr. Bertrand submitted to the Plan required affidavits setting forth his work with Premier Concepts.

41.     On at least two of Mr. Bertrand's affidavits that were submitted from January 2013 through 2017, Defendants made a specific determination that Mr. Bertrand's work with Premier Concepts was not in the retail food industry and noted that fact on Mr. Bertrand's completed affidavits with the annotation "ok" and "out of industry."

42.     Beginning in 2016, Mr. Wallace also began working for Premier Concepts.

43.     In their employment with Premier Concepts, neither Mr. Wallace nor Mr. Bertrand were employed in the same trade and craft that they worked in prior to their retirement when covered under the Plan.

44.     While employed during his covered employment under the Plan, Mr. Wallace worked in the retail food industry.

45.     While employed during his covered employment under the Plan, Mr. Bertrand worked in the retail food industry.

46.     While working for Premier Concepts, Mr. Bertrand and Mr. Wallace's principal responsibilities included visiting various stores on behalf of Premier Concepts' clients to take pictures of in-store displays and shelf stock conditions for marketing purposes.

47.     As employees of Premier Concepts, neither Mr. Wallace nor Mr. Bertrand work on behalf of the stores that they are visiting but rather for the wholesale and manufacturing companies that sell goods to various stores.

48.     While working for Premier Concepts, Mr. Bertrand and Mr. Wallace are employed in the marketing industry.

49.     Mr. Bertrand and Mr. Wallace chose their employment with Premier Concepts because they would be working outside of their trade and craft and because Premier Concepts is not in the retail food industry.

**C. Suspension of Benefits and Denial of Appeal**

50.     Although nothing had changed about his employment with Premier Concepts between 2013 and 2017, more than four years after he first told the Plan about his employment, by letter dated April 6, 2017, the Plan advised Mr. Bertrand that it considered his work with Premier Concepts to be work in the retail food industry and that he was not entitled to pension benefits from the Plan during months he worked for Premier Concepts.

51.     By letter dated April 6, 2017, the Plan advised Mr. Wallace that it considered his work with Premier Concepts work in the retail food industry and that he was not entitled to pension benefits from the Plan during months he worked for Premier Concepts.

52.      The Plan's April 6, 2017 letters to Mr. Wallace and Mr. Bertrand also advised that the Plan would suspend benefits going forward and would collect purported overpayments of retirement benefits under the Plan by suspending 100% of their pension benefits for the first month their pension benefits were reinstated following their suspension of benefits and 25% of the monthly benefits thereafter.

53.     Mr. Bertrand and Mr. Wallace each timely appealed the Plan's determination that their benefits were subject to suspension.

54.     By letter dated August 11, 2017, the Plan advised Mr. Bertrand that the decision to suspend a portion of his pension benefits had been upheld on appeal and that his benefits attributable to credit earned after December 31, 1997 would be suspended effective September 1, 2017.

55.     The Plan's August 11, 2017 letter to Mr. Bertrand stated that Mr. Bertrand purportedly had been overpaid pension benefits of $ 34,021.26 ($ 548.73 for 62 months) and that the Plan would withhold 100% of his first benefit payment after his pension benefits were reinstated and 25% of each monthly benefit thereafter until the purported overpayment was satisfied.

56.     By letter dated August 11, 2017, the Plan advised Mr. Wallace that the decision to suspend a portion of his pension benefits had been upheld on appeal and that because his work was purportedly in the same industry in which he worked while accruing benefits, his benefits attributable to credit earned after December 31, 1997 and benefits accrued though his prior participation in the Intermountain Plan would be suspended effective September 1, 2017.

57.     The Plan's August 11, 2017 letter stated that Mr. Wallace purportedly had been overpaid pension benefits of $ 3,836.28 ($ 319.69 for 12 months) and that the Plan would withhold 100% of his first benefit payment after his pension benefits were reinstated and 25% of each monthly benefit thereafter until the purported overpayment was satisfied.

58.     Mr. Bertrand was under age 62 when his benefits were suspended.

59.     Mr. Wallace was over age 62 when his benefits were suspended.

60.     Mr. Bertrand and Mr. Wallace have fully exhausted their administrative remedies.

61.     Although the letters to Plaintiffs stated that the Plan would collect any purported overpayments when the Plan resumed payments of benefits following the suspension of their benefits, which has not yet occurred, the Plan withheld 100% of Mr. Bertrand and Mr. Wallace's September 1, 2017 pension checks and did not pay any pension benefits for the October 1, 2017 pension payment due Mr. Bertrand and Mr. Wallace until on or about October 20, 2017.

62.     Despite multiple requests, Defendants have never provided any calculation of how they arrived at the amount of the purported overpayment to Mr. Bertrand and Mr. Wallace or the amount to be suspended.

63.     In addition to the suspensions being unlawful, the amounts being suspended and the amounts of the purported overpayments were calculated incorrectly.

64.     Upon information and belief, 25% of the purported overpayments are being withheld from that portion of Plaintiffs' benefits that the Plan acknowledged it was prohibited from suspending even though the benefits that were suspended have not been reinstated.

**D. Requests for Documents**

65.     By letters dated September 7, 2017, Mr. Bertrand and Mr. Wallace requested relevant Plan, Intermountain Plan and Rocky Mountain Plan documents governing their rights to benefits and documents and information relevant to the decision to suspend their benefits and denial of their appeals.

66.     By letter dated September 29, 2017, the Plan provided some, but not all of the documents that Mr. Wallace and Mr. Bertrand requested but did not provide *inter alia*, the following documents requested by Plaintiffs:

  a. The Plan documents for the Rocky Mountain Plan governing Mr. Bertrand and Mr. Wallace's rights to benefits and amendments thereto;

  b. The Plan documents for the Intermountain Plan governing Mr. Wallace's right to benefits and amendments thereto;

  c. Notices and summaries of material modifications regarding changes to the Plan;

  d. Copies of the collective bargaining agreements in effect during Mr. Wallace and Mr. Bertrand's employment;

  e. Documents and information showing the treatment of similarly situated Plan participants who worked following retirement, both in the retail food industry and in non-suspendible employment;

      f.  Agreements and other documents related to the merger and/or spin off of the plans under which Mr. Bertrand and Mr. Wallace were accruing benefits;

      g.  A calculation showing how the Plan calculated the amounts it claimed were suspendible and the calculation of the amounts purportedly overpaid to Mr. Bertrand and Mr. Wallace; and

      h.  All Plan rules and guidelines governing Mr. Bertrand's and Mr. Wallace's  right to work after retirement and the suspension of benefits, including any guidelines, rules, etc. for determining prohibited employment and for determining whether a retiree is working in the same industry, including the Retail Food Industry, and/or working in the same trade or craft.

67.     On December 21, 2017, 105 days after Plaintiffs' September 7, 2017 requests, Defendants provided the Rocky Mountain Plan documents and amendments and summary plan descriptions.

68.     On December 21, 2017, 105 days after Plaintiffs' September 7, 2017 requests, Defendants provided only the 2002 Intermountain Plan document and amendments thereafter and the Trust Agreement for the Intermountain Plan despite the fact that Plaintiff Wallace's rights under the Intermountain Plan are governed by the Intermountain Plan documents and amendments beginning in 1975.

69.     Defendants have not provided the rest of the documents requested by Plaintiffs.

### CLASS ALLEGATIONS

70.     In addition to Plaintiffs' claim for benefits, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action for purposes of Counts I, II and III consisting of:

All Plan participants who had accrued benefits under the Plan or predecessor plans prior to adoption of the Plan amendments of the suspension of benefit provisions purporting to be effective June 7, 2004 and whose retirement

benefits were suspended based on application of the expanded suspension of benefit rules contained in the 1991 Intermountain Plan amendment, the 1998 Plan amendment and/or the 2004 Plan amendments and their surviving spouses and eligible beneficiaries.

71. The class is so numerous that joinder is impracticable including because the members of the class are geographically dispersed, making joinder impracticable.

72. There are questions of law and fact common to the members of the class that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits as are due as a result of violations of ERISA including, *inter alia*:

    a. whether Defendants violated ERISA by suspending class members' benefits based on the expansion of the suspension of benefits provisions in the 1991 Intermountain Plan amendment or the 1998 Plan amendment and/or based on the unlawful 2004 Plan amendments purporting to retroactively readopt the unlawful suspension of benefits provisions;

    b. whether the 1991 Intermountain Plan amendment, 1998 Plan amendment and/or 2004 Plan amendments ever became effective and could form the basis for the suspension of benefits who had accrued benefits prior to the adoption of those amendments;

    c. whether Defendants failed to give advance notice of their suspension of benefit amendments prior to implementation;

    d. whether Defendants caused the forfeiture of benefits;

    e. whether Defendants breached their fiduciary duties by, *inter alia*: failing to determine participants' rights to benefits under the Plan with reference to nonforefeitable rights and accrued benefits under predecessor plans;  retroactively reducing accrued benefits; and failing to maintain documents and instruments required for proper administration of the Plan including predecessor plan documents;

    f. whether Defendants failed to maintain a written plan in accordance with

1    the requirements of ERISA; and

2        g.  whether Defendants failed to provide accurate disclosures including

3            notices of material modifications and accurate summary plan

4            descriptions.

5        73.    Mr. Bertrand and Mr. Wallace will fairly and adequately represent the

6    interests of the class members. They have diligently pursued their claims and have engaged

7    the undersigned experienced ERISA and class action counsel.

8        74.    The prosecution of separate proceedings by the individual members of the

9    class would create a risk of inconsistent or varying adjudications that would be dispositive

10   of the interests of other members not parties to the litigation or substantially impair or

11   impede their ability to protect their interests.

12       75.    Defendants have acted or refused to act on grounds generally applicable to

13   the class as a whole by engaging in the same violations of ERISA with respect to the class,

14   thereby making declaratory relief and corresponding injunctive and equitable relief

15   appropriate with respect to the class as a whole.

16       76.    A class proceeding is superior to other available methods for the fair and

17   efficient adjudication of this controversy including, *inter alia*, because:

18       a.  the class members have suffered from the same violations of ERISA and

19           the numbers and likely geographic diversity of class members make

20           joinder impractical; and

21       b.  the high cost and likely necessity for actuarial experts to assist in the

22           prosecution of the issues involved in this case, along with the relatively

23           modest sums that may be involved for individual participants likely

24           constitute a significant and recurring obstacle to the ability of individual

25           class members to retain competent and experienced ERISA counsel and

26           marshal the resources necessary to prosecute these complex ERISA

27           violations in separate legal proceedings yet likely have caused and will

28

1            continue in the future to cause loss of valuable pension and ERISA rights

2            unless remedied through injunctive and other appropriate relief.

3

**COUNT I**

**(TO REDRESS VIOLATIONS OF ERISA'S ACCRUAL OF BENEFITS**

4    **REQUIREMENTS PURSUANT TO SECTIONS 502(a)(1)(B) AND (a)(3))**

5          77.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs

6 as though fully set forth herein.

7          78.    Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides in part:

8      (g) Decrease of accrued benefits through amendment of plan

9      (1) The accrued benefit of a participant under a plan may not be decreased
by an amendment of the plan, other than an amendment described in section

10     1082(c)(8) or 1441 of this title.

11          (2) For purposes of paragraph (1), a plan amendment which has the
effect of–

12          (A) eliminating or reducing an early retirement benefit or a
retirement-type subsidy (as defined in regulations), or

13          (B) eliminating an optional form of benefit, with respect to benefits

14 attributable to service before the amendment shall be treated as reducing
accrued benefits. In the case of a retirement-type subsidy, the preceding

15 sentence shall apply only with respect to a participant who satisfies (either
before or after the amendment) the preamendment conditions for the subsidy.

16     ...

17          79.    Section 204(h) of ERISA, 29 U.S.C. § 1054(h), as in effect in May 1991 and

18 January 1998 provided in relevant part:

19      (h) Notice of Significant Reductions in Benefit Accruals

20          (1) A plan described in paragraph (2) may not be amended so as to
provide for a significant reduction in the rate of future benefit accrual, unless,

21 after adoption of the plan amendment and not less than 15 days before the
effective date of the plan amendment, the plan administrator provides a

22 written notice, setting forth the plan amendment and its effective date, to—

23      (A) each participant in the plan,
     (B) each beneficiary who is an alternate payee (within the meaning of

24 section 1056(d)(3)(K) of this title) under an applicable qualified domestic
relations order (within the meaning of section 1056(d)(3)(B)(i) of this title)…

25

26          80.    In accordance with settled law under ERISA, Plan amendments adopted in

27 violation of ERISA §§ 204(g) and (h) never become effective.

28

81.     Because the 1991 Intermountain Plan amendment purporting to expand the circumstances under which benefits could be suspended unlawfully reduced accrued benefits and reduced the rate of future benefit accruals in violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the 1991 Intermountain Plan amendment never became effective.

82.     Because the 1998 Plan amendment purporting to expand the circumstances under which benefits could be suspended unlawfully reduced accrued benefits and reduced the rate of future benefit accruals in violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the 1998 Plan amendment never became effective.

83.     Because the 2004 Plan amendments purporting to retroactively expand the scope of the suspension of benefits provisions unlawfully reduced accrued benefits and reduced the rate for future benefit accruals in violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the 2004 Plan amendments never became effective.

84.     By the acts and omissions complained of above, including, *inter alia,* by amending the Plan to reduce accrued benefits, by failing to give notice of a significant reduction in the rate of future benefit accruals, by failing to disclose Plan amendments, and by calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan amendments, Defendants violated ERISA, including, *inter alia* ERISA §§ 204(g) and (h) and applicable regulations.

85.     Section 502(a)(3) of ERISA provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

86.     Section 502 (a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that:
    A civil action may be brought -

        (1) by a participant or beneficiary - . . .
                        ***

15

(B) to recover benefits due to him under the terms of the plan,
to enforce his rights under the terms of the plan, or to clarify his
rights to future benefits under the terms of the plan.

87.    As a proximate result of Defendants' violations of ERISA, Mr. Wallace, Mr. Bertrand and class members have been harmed and, *inter alia*, have been deprived of rights and accrued benefits due or to become due.

88.    Plaintiffs and class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA § 204 and applicable regulations; enjoining Defendants from suspending benefits based on application of the unlawful 1991 Intermountain Plan amendment, 1998 Plan amendment and/or 2004 Plan amendments and to immediately make Plaintiffs and all class members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to eliminate the provisions of the Plan amendments purporting to expand the scope of the suspension of benefits provisions and declaring that such amendments never became effective; requiring Defendants to disgorge all profits and benefits gained from the wrongful suspension of benefits; enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT II
## (TO REDRESS D VIOLATIONS OF ERISA'S VESTING REQUIREMENTS)

89.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though set fully set forth herein.

90.    ERISA § 203, 29 U.S.C. § 1053, and regulations thereunder provide minimum vesting standards and set forth the conditions under which a participant's right to benefits under a plan becomes nonforfeitable.

91.    ERISA § 203(a), 29 U.S.C. § 1053(a), provides in relevant part that "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age..."

92.    By the acts and omissions complained of above, including by suspending benefits based on the application of the 1991 Intermountain Plan amendment, the 1998 Plan amendment and the 2004 Plan amendments, Defendants violated ERISA § 203 and regulations thereunder.

93.    As a proximate result of Defendants' violations of ERISA §§ 203, Mr. Wallace, Mr. Bertrand and class members have been harmed and, *inter alia*, have been deprived of rights under ERISA and vested nonforfeitable benefits.

94.    Plaintiffs and class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA § 203 and applicable regulations; enjoining Defendants from suspending benefits based on application of the unlawful 1991 Intermountain Plan amendment, 1998 Plan amendment and/or 2004 Plan amendments and to immediately make Plaintiffs and all class members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to eliminate the provisions of the Plan amendments purporting to expand the scope of the suspension of benefits; requiring Defendants to disgorge all profits and benefits gained from the wrongful violations of ERISA's vesting requirements; enjoining Defendants to pay vested benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

**COUNT III**
**(TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)**

95.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

96.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary

17

shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

\*\*\*

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

97.     Defendants have a fiduciary responsibility to provide Plaintiffs and class members with truthful and adequate disclosures of the suspension of benefits provisions and to administer the plan in accordance with ERISA and the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

98.     By the acts and omissions complained of above, including, *inter alia*, by failing to give notice to participants that the plan was amended to expand the scope of the suspension of benefits provisions, by applying suspension of benefits amendments to retroactively decrease accrued vested benefits, by depriving Plaintiffs and class members of rights protected by ERISA and the terms of the Plan, by failing to determine participants' rights to benefits under the Plan with reference to rights under predecessor plans that provided for benefits and rights that could not be forfeited and retroactively reduced and by failing to maintain documents and instruments required for proper administration of the Plan including predecessor plan documents, Defendants breached their fiduciary duties to Plaintiffs and class members.

99.     As a proximate result of Defendants' breaches of fiduciary duty, Plaintiffs and class members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA.

100.   Plaintiffs and class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and violated ERISA § 404 and applicable regulations; enjoining Defendants from applying the unlawful the unlawful 1991 Intermountain Plan amendment, 1998 Plan amendment and/or 2004 Plan amendments purporting to expand the scope of the suspension of benefits rules; surcharging the fiduciaries, reforming the Plan, *inter alia*, to eliminate Plan amendments that purported to expand the suspension of benefits provisions and declaring that such amendments never became effective and enjoining Defendants to and to immediately make Plaintiffs and all class members whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT IV
## (TO REDRESS VIOLATIONS OF ERISA'S DISCLOSURE REQUIREMENTS)

101.   Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

102.   Section 102 of ERISA, 29 U.S.C. § 1022, Summary Plan Description, provides in relevant part:

> (a)   A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 104(b)(1) of this title.

> (b) The summary plan description shall contain the following information: .

. . the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this title).

103.    Section 104(b) of ERISA, 29 U. S. C. § 1024(b), Publication of summary plan description and annual report to participants and beneficiaries of plan, provides in relevant part:

(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title–

(A)  within 90 days after he becomes a participant, or (in the case of a (beneficiary) within 90 days after he first receives benefits, or

(B)  if later, within 120 days after the plan becomes subject to this part. The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 1022 of this title every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits

20

under the plan... .

(2)   The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

(3)   Within 210 days after the close of the fiscal year of the plan, the administrator (other than an administrator of a defined benefit plan to which the requirements of section 1021(f) of this title applies) shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

104.   Section 402 of ERISA, 29 U.S.C. § 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

105.   By the acts and omissions complained of above, Defendants violated ERISA §§ 102, 104 and 402 and regulations thereunder

106.   As a proximate result of Defendants' violations of ERISA §§102, 104, and 402, Plaintiffs and class members have been harmed and, *inter alia*: have been deprived of material disclosures required to be made by Plan fiduciaries and have been deprived of the ability to make timely, informed decisions regarding their retirement benefits, their employment following retirement, their savings, and their decisions regarding whether and when to retire, and Defendants have been unjustly enriched.

107.   Plaintiffs and class members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA §§ 102, 104, and 402 and applicable regulations, enjoining Defendants from failing to comply with their disclosure obligations and from applying suspension of benefits provisions and amendments that were not disclosed in accordance with ERISA and to

recalculate all class members' benefits, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, and reforming the Plan as necessary or appropriate, together with pre-judgment and post-judgment interest, attorneys' fees, and costs.

**COUNT V**
**(IN THE ALTERNATIVE, TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B))**

108.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

109.    In the event it is determined that Defendants were permitted to apply the 1991 Intermountain Plan amendment, the 1998 Plan amendment and/or 2004 Plan amendments to suspend Plaintiffs' benefits, Defendants nevertheless violated the terms of the Plan.

110.    Defendants' determination that Plaintiffs Bertrand and Wallace's work was suspendible, including because they were purportedly working in the same industry prior to and following retirement, violated the terms of the Plan.

111.    Defendants' determination that Plaintiff Wallace's work was suspendible without taking into account the fact that he was not working in the same industry, same trade or craft as they were working in while working in covered employment also violated the terms of the Plan.

112.    As a proximate result of Defendants' violations of the terms of the Plan, Plaintiffs were harmed and deprived of benefits due under the terms of the Plan.

113.    As a result of Defendants' violations of the terms of the Plan, Plaintiffs are entitled to an order declaring that Defendants violated the terms of the Plan, enjoining Defendants from violating the terms of the Plan and directing Defendants to pay Plaintiffs all benefits wrongfully withheld retroactively to September 1, 2017, together with prejudgment interest, attorneys' fees and costs.

///

///

///

## COUNT VI
### (FOR VIOLATIONS OF ERISA'S ERISA'S CLAIMS PROCEDURE AND DISCLOSURE REQUIREMENTS)

114.    Plaintiffs repeat and reallege each allegation set forth in the prior paragraphs as though fully set forth herein.

115.    Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:

In accordance with regulations of the Secretary, every employee benefit plan shall--
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits  has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

116.    ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators, *inter alia*, must provide claimants upon request and free of charge all documents relevant to their claim for benefits and appeal, must provide claimants whose claims for benefits are denied with the specific reasons for the claim denial, must provide claimants with documents and information showing that plan provisions have been applied consistently with respect to similarly situated claimants, must have administrative procedures and safeguards designed to ensure that benefit determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants, must provide claimants with the plan provisions relied upon, and must provide a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

117.    Section 104(b)(4) of ERISA, 29 U.S.C. §1024(b)(4), provides in pertinent part:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement,

trust agreement, contract, or other instruments under which the plan is established or operated.

118.    Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

> Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

119.    Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in Section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1) of...ERISA [has been] increased from $100 a day to $110 a day."

120.    By the acts and omissions set forth above, including, but not limited to, *inter alia*, by failing to provide accurate information about the suspension of their benefits in the letters advising Plaintiffs of the suspension of their benefits and determinations on appeal, by failing to timely furnish to Plaintiffs with documents and information they requested in writing and by failing to have administrative procedures and safeguards to ensure that the determinations have been made in accordance with governing plan documents and plan provisions have been applied consistently with respect to similarly situated claimants, Defendants violated ERISA's claims procedure requirements.

121.    As set forth above, despite Plaintiffs' requests and a legal obligation to furnish documents requested by Plaintiffs, Defendants failed to produce and delayed in

producing requested documents and information that Defendants were required to furnish and which Plaintiffs was entitled to receive under ERISA § 104, 29 U.S.C. § 1024 and the regulations thereunder.

122.    Upon information and belief, Defendant Plan Administrator's failure to timely furnish documents requested by Plaintiffs did not result from matters beyond its control.

123.    As a result of Defendants' acts and omissions set forth above, Plaintiffs have been harmed and their right to benefits and to pursue their claims were chilled, delayed and thwarted.

124.    Plaintiffs are entitled to appropriate declaratory, injunctive and equitable relief, including an order enjoining Defendants to provide a reasonable claims process and to follow ERISA's claims procedure and disclosure requirements, requiring Defendants to provide appropriate make-whole relief, surcharging the Trustees and ordering Defendants to disgorge and remedying Defendants' unjust enrichment.

125.    Defendant Plan Administrator should be enjoined to timely furnish requested Plan documents and should be assessed a penalty of $110 per day for each separate violation for every day following 30 days after Plaintiffs' first requests for documents that Defendants failed to produce under ERISA § 104 through the date each requested document was or is furnished to Plaintiffs, together with costs and attorneys' fees.

WHEREFORE, Plaintiffs request that Judgment be entered in their favor against Defendants as follows:

A.    Declaring that Defendants violated ERISA §§ 102, 104, 203, 204, 402, 404, 503 and regulations thereunder;

B.    Alternatively, declaring that Defendants violated the terms of the Plan with respect to the determinations to suspend Plaintiff Bertrand and Plaintiff Wallace's benefits;

C.      Enjoining Defendants from violating ERISA §§ 102, 104, 203, 204, 402, 404, 503 and regulations thereunder and enjoining any of the challenged amendments from taking effect;

D.      Alternatively, enjoining Defendants from violating the terms of the Plan;

E.      Ordering reformation of the Plan, *inter alia*, to eliminate the provisions of the 1991 Intermountain Plan amendment, the 1998 Plan amendment and the 2004 Plan amendments purporting to expand the scope of the suspension of benefits provisions, declaring that such amendments never became effective and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed;

F.      Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff and class members together with all profits attributable thereto;

G.      Surcharging the Board of Trustees for the full amount of Plaintiffs' and class members' withheld retirement benefits and such other amounts to make Plaintiffs and class members whole;

H.      Awarding Plaintiffs $110 per day for each day past 30 that Defendants delayed in producing Plan documents until Defendants comply with Plaintiffs' request for documents and information to which Plaintiffs are entitled under ERISA

I.      Enjoining Defendants to recalculate Plaintiffs' and class members' retirement benefits and make Plaintiffs and class members whole for all losses, including pre-judgment and post-judgment interest;

J.      An award of attorneys' fees and costs pursuant to ERISA § 502(g) and/or the common fund theory, and

K.      Awarding such other and further relief the Court deems just and proper.

///
///
///

1    **DATED** this 27th day of December 2017.

2

3                                          **MARTIN & BONNETT, P.L.L.C.**
                                           By: s/ Susan Martin
4                                          Susan Martin
                                           Jennifer Kroll
5                                          4647 N. 32nd St., Suite 185
                                           Phoenix, Arizona 85018
6                                          Telephone: (602) 240-6900

7

8                                          *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28